313-0655, Marilyn and Robert Bowers, after lease, by Philip O'Donnell v. General Casualty Insurance Appellant by Joe T. Weatherill May it please the Court, Counsel. My name is Joe Weatherill and I represent General Casualty Insurance Company in this appeal. This appeal started with the underinsured motorist claim arising out of an accident where Marilyn Bowers was struck as a pedestrian by an automobile in a gas station. The accident happened in August of 2011. Thereafter, the tortfeasor, or the driver of the car that struck the gas station, tendered their policy limits and Marilyn Bowers proceeded to make an underinsured motorist claim under her general casualty policy. Originally, Ms. Bowers had made a policy limits demand of the additional $150,000 under the policy. She then subsequently withdrew that demand and filed a declaratory action seeking to stack the coverages provided by the policy. The declaratory action was heard by Judge Burnaby in Burrough County and he ultimately ruled in favor of the plaintiff and against general casualty, allowing the plaintiff to stack the coverages. We have timely filed the appeal and are here before the Court with regard to whether or not, based on the policy language at issue in our general casualty policy, plaintiffs should be allowed to stack the coverages for the three automobiles covered under the general casualty policy. Now I'm going to submit to the Court that this is really a case of first impression, so to speak. While the stacking issue certainly is not a case of first impression, because stacking law is clear and pretty well defined, the And so we're going to ask the Court to take a fresh look at the policy language we have on the declarations page that's submitted before the Court, and then use the case law that precedes it as some guidance as to how the policy should be interpreted. I'm going to submit first that the declarations page itself is unambiguous, and then even if you were to determine that there is an ambiguity created by the matrix format used in the declarations page, that the underinsured motorist policy clears up any question with regard to the stacking issue. First, let's go to the declarations page. We have included on page 19 of our brief a copy of the declarations page as submitted with the policy. As you can see here, the declarations page is in a matrix format, and it lists three vehicles and the coverages that are attended to all three vehicles. Most significantly on the declarations page is the language that is right at the top of the matrix. The language is new and different than any other policy language analyzed by any court in any case that we are aware of. The language provides that the coverages listed below apply separately for each vehicle and are provided only where a premium or included is shown. It then goes on to state, which is the new language we're asking you to pay close attention to, that the limit of liability applies separately for each vehicle. So the language is that there's no stacking with the three coverages as they are listed. It's making it clear, an unambiguous statement to the insurer who reads the declarations page, to the insured who reads the declarations page, that no stacking is allowed and that each policy limit applies separately for each vehicle. I believe that should end the discussion really with regard to whether there's any ambiguity in our policy. And you don't need to go any further in analyzing whether you need to get to the limitation language that's contained in the underinsured motorist provision. However, we can see that there is case law out there, the bruta dicta being the seminal one, that indicates that when policy limits are listed more than one time on a declarations page or an endorsement page, that there may be an ambiguity. And the courts have clearly went on to say there's no per se rule that if it's If you want to go on to look at it, then we go to the next part of the analysis. Let's look at the policy language that's contained in the underinsured motorist provision of the general casualty policy. The underinsured motorist provision provides that they will pay compensation for damages when an insured is legally entitled to recover them from the owner or operator of the underinsured motor vehicle. It then limits that each underinsured motorist coverage is the maximum limit that we will pay for all the damages. If you look again at the declarations page and refer back to it, the per person limit is always 250. There is never an aggregate per person limit. And the language says we're going to limit liability to the per person limit. No aggregate per person limit appears anywhere on the declarations page. It then goes on to say this is the most we will pay regardless of the number of insureds, the claims made, the vehicles or premiums shown on the schedule of declarations, or the vehicles involved in the accident. Again, this is just reaffirming what is already stated on the declarations page, which is that the limit of liability applies separately for each vehicle. This clearly gets rid of any potential ambiguity that might be created under the because it does not address the policy language in our policy are some of the cases that we've referred to in our trial briefs and in the briefs before the appellate court. I want to refer the court first to the Hobbs case. That's an Illinois Supreme Court case where the court said there's no precise rule of ambiguity simply by listing the policy limits more than one time. But they said we have to look at the language. Once we see them which is that the limit of liability, a limitation of liability coverage does not contravene public policy and that when you look at the policy, you have to interpret it as a whole. You cannot read certain language out of the policy simply to reach an ambiguity or to find your desired result. You have to interpret the language that's there. Doing so in this case requires us to look at the limitation of liability as well as the language on the interpretation. The policy coverages should not be staffed. This court should also take a look at the Strickland case and the Ritter case. In the Strickland case, it was a 2004 case in the 2nd district and there they again rejected the per se rule saying just because it's listed more than once doesn't mean that there's an ambiguity, that you have to interpret the language of the policy. Ritter in the 4th district did the same thing in indicates the amount of coverage for each vehicle. It doesn't try to create an ambiguity or staffing of the policy coverages. This court also addressed this issue in the prudential property and casualty versus Kelly case in 2004 addressed by this 3rd district. And there they were discussing the limitation of coverages and said that the limitation applies regardless of the number of policies, insured cars or claims made. That's what we have here, that similar language. And they said listing the UIM coverage limits more than one time on a declarations place does not create an ambiguity in the faces of a clear anti-stacking provision. Significant to note here is the anti-stacking provision that's in our case is the same anti-stacking provision that was analyzed in the Hobbs case by the Illinois Supreme Court. In the Hobbs case, the Illinois Supreme Court decided that the anti-stacking provision was in fact clear and unambiguous and did not allow stacking. So if you're looking for some guidance in terms of our anti-stacking provision, I think the Illinois Supreme Court has provided it. The 7th circuit in the Grinnell versus Baker case also provides some interesting guidance for the court. While I understand it's not binding on this court, Judge Easterbrook took a painstaking analysis of the conclusion that Illinois' 5th district stands alone in following a per se rule, which I think our state courts have now indicated it does not do. But in addition to that, went through an interesting analysis about what the intent of the policy is and how the policy should be interpreted when we are dealing with stacking issues. And the court said certainly by listing, adding one vehicle to the policy, the insurer and the insured would not The analysis of Easterbrook is specific and particularly insightful when they say still how does listing the policy limit more than once justify stacking unless the no-stacking clause is read out of the policy. I think to reach the conclusion reached by the trial court in this case, that's what you would have to do. You would have to read the anti-stacking provision out of the policy. Now of course this court has a de novo standard of review in this case because it is a kind of his analysis of the case law as he read it and was presented to him in the summary judgment motion. Interesting to note in his analysis when you read through that, is he acknowledges that the policy language in our case is different, but he gives no deference to the difference in the language. He says I see it, but it doesn't matter to me. And I don't think that's a fair analysis. I think every word has to matter and every part of the policy has to matter. He disregarded the Ritter case from the 4th district saying I'm just not going to follow it, I don't like it. He didn't distinguish it and in the Ritter case there was more than one policy listed on the declarations page. It had a similar anti-stacking provision that we're dealing with here and the 4th district found that it was clear and ambiguous and stacking was not allowed. He just simply didn't like the result so he didn't follow it. The court also at the time said once it's ambiguous, then I'm going to allow him to stack it. That clearly is not the right result in the state of Illinois. Clearly the courts and the Supreme Court in particular and Hobbs have said there's no per se rule, you can't just stop there, you have to analyze the language. In doing so, I think when the court analyzes the language in our policy, both the language on the declarations page which is very clear and unambiguous in stating that the limit of liability applies separately for each vehicle and reads that in conjunction with the limitation language in the UIM provision, there only one result can be reached. And on that basis, we would ask that the court remand this matter, reverse the summary judgment, remand it back to the trial court with direction that judgment be entered in favor of general casualty and that only one, the only one per person limit should be applied. Can I ask an incredibly stupid question? Absolutely. She was a pedestrian when she was injured and she was inside the gas station? She was. Did she drive one of these three vehicles to that gas station? She did. She was from Tiscawa. She had driven down to Peoria, Dunlap actually, and she had, I don't know if she had gotten gas or not, but was in looking at a magazine in the gas station and someone who was intoxicated drove their vehicle through the wall of the gas station and it knocked the magazine rack and wall into her. But she drove one but not three cars? That's right. And that's a very good point, your honor. Oh, good. She drove one car and she could only, clearly, I mean, obviously she could only drive one car at a time. And she was either, I believe she was the driver, I don't believe her husband was present when this happened, so I believe it was her that actually drove the car to the gas station and then she was inside and she drove her vehicle there. Do you know which vehicle? I do not know. Is it in the record? It is not in the record. It is not in the record. Okay. Thank you, your honor. Mr. O'Donnell. Again, it's important in all these insurance cases to note that this turns on the language, but if we start back with what Breuder did. Breuder looked at a clause that was essentially identical to our clause, but in Breuder, in 1993, the Supreme Court was faced with the argument that stacking should occur because premiums were listed more than once. In DICTA, the Supreme Court said, rejecting that argument, pointed out that a policy with this clause, the clause that's at issue in this case, a standard what's called an ISO clause, the Supreme Court said in Breuder, it would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured. There would be little to suggest by such a listing that the parties intended the coverage would be limited to that provided for only one of two vehicles. It would be more than reasonable to assume that the parties intended that in return for two premiums, two coverage amounts were afforded. They were discussing a situation that was not before those. That's why all these subsequent 17 cases that Judge Burnaby recited in his essentially 30-page transcript ruling, all these cases talk and start with the Breuder DICTA, so you have to keep that in mind. Now, what's important that we should note here, counsel referenced the case of Ritter, counsel referenced the case of Strickland. I'll talk about Strickland first, but both Ritter and Strickland are cases that were decided before the Supreme Court's decision in Hobbs. Hobbs is essentially the most recent important pronouncement on stacking from our Supreme Court. What did the Supreme Court in Hobbs do? It reiterated and reaffirmed the DICTA from Breuder, but it was faced with a very similar argument. That is, again, an issue of multiple listings of premiums. What did the Supreme Court in Hobbs say? They're talking about now the Hobbs policy that had been issued by Hartford, and they say, as noted in our discussion of Breuder, where the anti-stacking clause limits the liability to the limit shown on the declarations page, and the declarations page lists the limit twice, it would not be difficult to find an ambiguity. So that's in 2005, just nine years ago. Ritter doesn't even discuss the Breuder DICTA at all. Strickland points out that, in fact, and what's important about Strickland you need to know is that there was only one policy limit listed on the DEC sheet. I agree, Ritter is a case that stands alone for its holding from the Fourth District, but it's important to note Ritter was decided several years prior to the Supreme Court's decision in Hobbs, and there's no discussion, again, in Ritter of Breuder. And that's the most important thing you need to know about those cases. But as to your question, Strickland noted that there can be a factual ambiguity that will arise in that case generally in an anti-stacking context where someone is not in any of the vehicles. And that was not part and parcel of Judge Burnaby's ruling. Judge Burnaby's ruling was essentially that, listen, the declarations page says the limit, or excuse me, the anti-stacking clause in the ISO form says the limit, but unfortunately when you look at the declarations page it doesn't tell you which one of the three or four listed limits. In this case it's three. And that's important because that's where the ambiguity arises, as found by and as emphasized by the Supreme Court in Hobbs. Now, this Court in 2008 addressed a stacking argument in a liability context in a case called Cannon v. Progressive. There's a very well-reasoned, learned opinion issued by this Court that points out that the Hobbs dicta and the Breuder dicta is still essentially what the law of Illinois should and would be in the appropriate case if the limits are listed more than once, in addition to the premiums being listed more than once, as occurred in this case. But in Cannon v. Progressive, in that case, the limit of liability was listed only once. Now, the carrier in this case issued a policy and in 2009 litigated the case down in the Fifth District. While they say that, oh, this is a problem in the Fifth District, if you analyze all the districts that are associated with this issue that Judge Burnaby recited through his ruling, you will see that the most recent Fifth District opinion, Hanson v. General Casualty, ruled in a fashion consistent with Hobbs and Breuder. And what was that issue in Hanson v. General Casualty? The reason I cite that is because this carrier litigated that case in the Appellate Court just three or four years ago, after Hobbs. In Hanson, there was 20 separate listings of premiums on a foreign policy. They all had real low limits of like $40,000 or $20,000, $40,000. The holding from the Fifth District consistent with Hobbs and Breuder was, you did not list the policy limit separately. You only listed all these premiums and, therefore, the ambiguity of the ISO clause, that is referring in the anti-stacking clause in the policy language to the limit, that ambiguity didn't arise because there was only one limit, thus the limit. Here in this case, it's listed three times, and that is the very straightforward and basic answer to the question that Judge Burnaby was facing. I don't recall any settlement demand being made as referenced in counsel's opening statement that limited us to one limit. In any event, I think the assertion was that the value of the case, because the lady was hit as a pedestrian in a grocery store, when a car drove into the grocery store and she sustained a severe, severe congenital fracture, the assertion was made by myself without question that the value was well in excess of $250,000, which was their asserted cap on our liability. We can talk all about the case of Grinnell from the Seventh Circuit that Judge Easterbrook wrote. That case is pre-Hobbs, so it's insignificant and it's not binding in any fashion or controlling on this court. What is important about the way that opinion came out is there was a case on point called Allen v. Transamerica that was decided just a couple years earlier by the Seventh Circuit in our same exact policy language, which the Seventh Circuit panel that decided that case said the Bruder Dicta applies. It's only at that time six years old, and therefore, because the policy limits were listed multiple times in addition to the listing of those premiums multiple times in the context of that same policy language, the ISO clause that limited the liability to the limit, stacking could occur. In the Grinnell case decided three or four years later prior to Hobbs, the important distinction in that case is that the policy limit was only listed once. So while Judge Easterbrook, if you read that opinion, you should think that no insured who paid all these premiums over the course of a long policy history with one carrier, if you read all this and you think, gosh, Judge Easterbrook, he must really hate the concept of stacking. He's talking all about what insureds intend and expect when they buy policies. We all know that the insureds don't read the policies before they buy them. They don't want to negotiate these auto policies. And, in fact, what my client intended and expected when she bought the policy is parole evidence. You decide these cases and these anti-stacking clauses based upon the policy language that is at issue. And let's talk about the policy language. That's the ISO clause that doesn't tell us which limit. You can look at the Supreme Court's decision from 1995 in a case called Gress's Act. Gress's Act is important only because it spells out what a carrier needs to do to have a very clear and unambiguous anti-stacking clause. That's not this clause that's at issue in this case. What you also need to recall, if you can, in this case, is that the prior policy period for our client's GC, general casualty policy, had on the declarations page a very clear and unambiguous anti-stacking clause that said, you can't stack these coverages that are listed here. For whatever reason, four months before this injury occurred, in April of 2011, they issued her a new declarations page with new language on that and deleted that clause. Most of the declarations pages left intact. And Judge Burnaby appropriately pointed out that while that doesn't necessarily control here, but what it does do is it shows this court that the carrier could have included that clause on the declarations page and eliminated the issue that has been there and a viable issue for the appropriate language since Hobbs and even since Brewer. What's important here, too, is to look at all these cases. I've cited several cases in my brief that talk about Hobbs and its import and how it's discussed. The issue rises or falls, as I mentioned, on the language that's in the anti-stacking clause. When it's read in conjunction with the declarations page. If we read Judge Easterbrook's opinion in the Grinnell case decided prior to Hobbs, you'd think that you can look at these things separately and Illinois law makes clear that you just can't do that. And so I think this issue is very clear in light of the Hobbs holding from 2005. And I agree, Hobbs said, again, well, they didn't pay or they didn't list multiple policy limits, so again, we're going to go with Brewer. But now we have that case before this court. And Judge Burnaby made the correct ruling. He recited in very thorough fashion how all these clauses were either similar or dissimilar. And that's what's most important. Because in the Strickland case that counsel referenced, there was a very clear anti-stacking clause that said the most they'd pay on any UIM claim was the limits for any one audit. Well, we don't have that language in the ISO clause, and that's why we're here. I mean, I would never have made an ambiguity argument had we had that language that was in Strickland. But for what it's worth, the case law is clear. We just ask that you follow the Illinois Supreme Court's holdings in Brewer and Dicta, or in Brewer and Dicta and the holding in Hobbs, which reiterated the viability of that dicta. Thank you. I have to go back to my incredibly stupid question. If she were a pedestrian in a crosswalk and was struck by an underinsured older vehicle driver, would you view that differently than if she were a passenger in a car struck by that same driver in an intersection? I don't in this case because whether she's in the store or whether she is in a crosswalk, under these facts, that is, our anti-stacking clause is ambiguous because it just refers to the limit, and then if you go to the declarations page, what do you see? You see three limits, so we don't know which one is the limit. To answer your question, I don't believe in this case it's different. In other policy language, it can be important, and that's what Strickland referenced. The reference in Strickland was that because they said the limit is tied to any one auto, there might be an ambiguity by being a pedestrian, but that anti-stacking clause in Strickland was not the ISO clause that we have at issue in our case. Okay. Thank you. Thank you, Mr. O'Donnell. Thank you. Ms. Weatherly. In brief rebuttal, the plaintiff spent some time in his oral argument talking to you about what the prior policy language was. Clearly, we're all aware that the prior policy language, either in this general casualty policy or in any policy, is irrelevant. It doesn't make any difference what the policy coverages were four months before, four years before, ten years before. What the court is asked to do and what the court is obligated to do is look at the policy language at issue before the court here today. That red herring argument that they changed the policy and somehow that matters, I get that it was included in Judge Burnaby's ruling and that he found it in some way significant, but the reality of it is it is not. And this court should disregard any inclination to look at what the prior policy language was and compare it to this policy language. It's just simply not relevant. In a declaratory action, as the court is aware, what you have to focus on is what is the policy language before you. In looking at the policy language, you will note that Mr. O'Donnell and the plaintiff in this case did not make any reference to the separately language listed on the declarations page in the matrix for the coverages. That language is important. In the Hobbs case, he keeps talking about Grinnell being before Hobbs. It doesn't matter. Grinnell is not inconsistent with Hobbs. Hobbs simply said to this court, there's no per se rule. And just because you list policy limits more than once doesn't mean that there's an ambiguity. There may be an ambiguity, and the court in Hobbs reaffirmed what the courts have all along been saying, which is look at the policy language and see if it's cleared up. And the policy language in this case clears it up on the face of the declarations page itself. It says in a statement that's not included in any other policy, the limit of liability applies separately for each vehicle. It's telling you they're separate. It's telling you you can't aggregate or stack them. And the plaintiff didn't address that in the argument because there's nothing they can say. That language is clear. And if you look at the then further on in the limit of liability language in the underinsured motorist provision, it says the most we will pay is the per person limit shown in the declarations page regardless of the number of vehicles included. And then it says we apply the limit separate.  It's the same here. There's no ambiguity. There's no unclarity. It is clear what they're looking for. Plaintiff says had the language been as clear as it was in another case, I wouldn't be here before you today. That's kind of a ridiculous statement when we all have to acknowledge that there's more than one set of policy language that can be clear and unambiguous. Here we have a statement in the policy that is clear and unambiguous. Whether it's the same as another one or not, this court is smart enough to look at the policy language and see what's clear. And the policy language here is clear. So we do ask that the court follow what Hobbs is doing and that this court follow the Illinois Supreme Court, which it is obligated to do, and agree that there's no per se rule. Judge Burnaby gave lip service to it and said there's no per se rule, but then applied one. And we're asking this court to not do that. We're asking this court to take it beyond the next step, to take it to the next step and say, okay, if we think there's an ambiguity because it's listed more than once, let's look at the policy language. And I believe when the court does that, which Judge Burnaby said he sees the word separate but it didn't matter to him, I think it matters. And we're asking this court to apply the language as written, read all the words into the policy, and find that the anti-staffing provision is clear and unambiguous when read in conjunction with the declarations page and reverse Judge Burnaby and amend this back for judgment in favor of general casualties. Thank you. And thank you both for your argument today. We will take this matter under advisement back to the written dispositions. Good night.